UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, ) ) ) | ) Civil Case No. 10-1948 (RJL) |
| Plaintiff, ) ) | |
| v. ) ) | ) related to |
| GRAFF/ROSS HOLDINGS LLP, ) ) | ) Civil Case No. 11-941 (RJL) |
| Defendant. ) | ) |

MEMORANDUM OPINION
(September 26, 2012) [Dkt. ##24, 33]¹

These actions are related to *Graff/Ross Holdings LLP v. Federal Home Loan Mortgage Corp.*, No. 07-cv-796 ("*Graff/Ross I*"), in which this Court recently issued a ruling of invalidity as to the challenged patent claims. Mem. Op. [Dkt. #121], *Graff/Ross I*, No. 07-cv-796 (Sept. 24, 2012). These cases involve two related patents issued to defendant Graff/Ross Holdings LLP ("Graff/Ross") by the United States Patent and Trademark Office ("USPTO"): Patent No. 7,685,053 (the "'053 patent") and Patent No. 7,908,202 (the "'202 patent"). On November 15, 2010, plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac") filed a complaint against Graff/Ross seeking a

---

¹ Unless otherwise noted, all docket references herein are to the docket in lead Civil Case No. 10-1948. The respective docket numbers for the pending motions in Civil Case No. 11-941 are numbers 16 and 25.

declaratory judgment of non-infringement or invalidity of the '053 patent.[2] Compl. [Dkt. #1]. Thereafter, defendant counterclaimed for patent infringement. See Def.'s Answer to Pl.'s Am. Compl. for Declaratory J. ("Def.'s Ans.") [Dkt. #9] at 7. On May 19, 2011, Freddie Mac filed a complaint in a separate action seeking a declaratory judgment of non-infringement or invalidity of the '202 patent, Compl., No. 11-cv-941 [Dkt. #1] (the "'202 Complaint"), to which Graff/Ross filed a counterclaim for patent infringement.[3] See Def.'s Answer & Countercls., No. 11-cv-941 [Dkt. #7] ("Def.'s '202 Ans."). On September 9, 2011, defendant filed a Motion for Partial Summary Judgment as to Patent Validity ("Def.'s Mot. Validity") [Dkt. #24] with respect to both patents. Plaintiff opposed this motion, and on May 21, 2012, filed a Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 ("Pl.'s Mot. Invalidity") [Dkt. #33] as to both patents. Upon consideration of the parties' pleadings, relevant law, and the entire record herein, plaintiff Freddie Mac's motion [Dkt. #33] is GRANTED and defendant Graff/Ross's motion [Dkt. #24] is DENIED.

---

[2] Plaintiff filed an amended complaint on February 17, 2011, supplementing its allegations. See First Am. Compl. ("Am. Compl.") [Dkt. #7].

[3] Graff/Ross originally sought to amend its complaint in *Graff/Ross I* to include allegations related to the '053 and '202 patents. See Graff/Ross's Notice Concerning Amending Compl. to Add Two Related Graff/Ross Patents, *Graff/Ross I*, No. 07-cv-796 [Dkt. #89]; Graff/Ross's Opposed Mot. for Leave to File Third Am. Compl. for Patent Infringement & Demand for Jury Trial, *Graff/Ross I*, No. 07-cv-796 [Dkt. #98]. This request was denied by the Court. See Minute Orders, *Graff/Ross I*, No. 07-cv-796 (May 12 & 16, 2011). Because these later filed cases, 10-cv-1948 and 11-cv-941, "involve the same accused products," the parties proposed a joint schedule and filed joint briefing in the cases. See Revised Joint Meet & Confer Statement Under LCvR 16.3 & Rule 26(f) [Dkt. #29] at 1-2. Therefore, this Court will simultaneously address the identical motions filed in each case.

## BACKGROUND

On March 23, 2010, the USPTO issued the '053 patent, entitled "Bidder System Using Multiple Computers Communicating Data to Carry Out Selling Fixed Income Instruments," to Graff/Ross. Am. Compl. ¶ 16. Nearly a year later, on March 15, 2011, the USPTO issued to Graff/Ross the '202 patent, entitled "Computer System to Generate Financial Analysis Output."[4] '202 Compl. ¶ 29, No. 11-cv-941. The patents are directed at "systems and methods that allow for the electronic sale of a component of a fixed-income asset," and both "are continuations of the '347 Patent" at issue in related case *Graff/Ross Holdings LLP v. Federal Home Loan Mortgage Corp.*, No. 07-cv-796. Mem. of P. & A. in Supp. of Def.'s Mot. Validity ("Def.'s Mem. Validity") [Dkt. #24-1] at 3. Plaintiff alleges that Freddie Mac has infringed on these patents "by using computer systems and methods to conduct electronic bond auctions of fixed income instruments."[5] Def.'s Ans. at 7; Def.'s '202 Ans. at 7-8, No. 11-cv-941. Now both parties seek a determination of the validity of the patents. *See generally* Def.'s Mot. Validity; Pl.'s Mot. Invalidity. At issue is the validity of 614 claims of the two different patents. Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. Invalidity ("Pl.'s Mem. Invalidity") [Dkt. #33] at 4; Def.'s Mem. of P. & A. in Opp'n to Pl.'s Mot. Invalidity ("Def.'s Mem. Opp'n")

---

[4] Richard A. Graff is listed as the sole inventor of the patents, but he assigned his interest to Graff/Ross. *See* Am. Compl. ¶ 17 (the '053 patent); '202 Compl. ¶ 29, No. 11-cv-941 (the '202 patent).

[5] I find it important to note, as plaintiff so kindly pointed out, that Freddie Mac does not host the website it uses to conduct these auctions; rather, an entity named Grant Street Group "runs the website," and Freddie Mac is merely a user. Pl.'s Mem. Invalidity at 1 n.1. According to plaintiff, Graff/Ross curiously has not sued Grant Street. *Id.*

[Dkt. #37-1] at 3.[6] For the sake of ease and clarity, I will analyze the claims in accordance with the categories identified by plaintiff in its motion for summary judgment.

Plaintiff divided the claims into nine groups. Group 1 consists of independent claims describing a "computer system" similar to the independent claim found invalid by this Court in *Graff/Ross I*. Pl.'s Mem. Invalidity at 4, 10. Group 2 consists of claims dependent on Group 1 Claims,[7] but limited to particular fields of use. *Id.* at 4. Group 3 Claims include two independent claims, and claims dependent on them, that describe the "methods" of Groups 1 and 2 Claims. *Id.* Group 4 Claims include two independent claims directed at multiple computer systems that implement Group 1 Claims. *Id.* Group 5 consists of claims dependent on Group 4 Claims, but limited to particular fields of use. *Id.* Group 6 contains one independent claim that describes the method used by the Group 4 Claims. *Id.* Group 7 consists of claims dependent on the Group 6 Claim, but limited to particular fields of use. *Id.* Group 8 Claims include three independent claims,

---

[6] The '053 patent contains 415 claims, U.S. Patent No. 7,685,053, Ex. A to Pl.'s Mem. Invalidity, and the '202 patent contains 199 claims, U.S. Patent No. 7,908,202, Ex. B to Pl.'s Mem. Invalidity. Sixteen of the 614 claims—four claims of the '053 patent and twelve claims of the '202 patent—are independent claims, and the remaining 598 claims—411 claims of the '053 patent and 187 claims of the '202 patent—are dependent on one or more of the independent claims. Pl.'s Mem. Invalidity at 8; Def.'s Mem. Opp'n at 3. Of the 614 claims, 470 claims, including thirteen of the sixteen independent claims, assert use of a "computer system," while the remaining 144 claims, including three independent claims, recite a method. Def.'s Mem. Opp'n at 3.

[7] Dependent claims "contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112.

4

and claims dependent on them, that describe the apparatus used to implement Groups 6 and 7 Claims.[8] *Id.* And, Group 9 consists of claims dependent on Group 8 Claims with output means limited to monitors. *Id.* Groups 1-5 include claims only from the '202 patent and Groups 6-9 include claims only from the '053 patent. *Id.* at 9.

Plaintiff contends that the "patents-in-suit" fail "to claim patent-eligible subject matter." *Id.* at 1. According to plaintiff, the patents "recite the abstract idea of computing a price for the sale of a fixed-income asset and generating a financial output," and, because abstract ideas are not patentable, defendant's patents are invalid under 35 U.S.C § 101. *Id.* at 3-4. Defendant counters that the patents constitute subject matter eligible for patent, and in any event, plaintiff has failed to meet its burden of persuasion. Def.'s Mem. Opp'n at 1; Def.'s Mem. Validity at 1-2. Defendant argues that the patent "claims are directed to computer systems," and are "patent-eligible because they do not . . . merely recite a fundamental principle with only the words 'apply it [using a computer].'"[9] Def.'s Mem. Opp'n at 1. For the reasons that follow, I find that plaintiff has met its burden by clear and convincing evidence, and therefore, GRANT plaintiff's motion for summary judgment, and DENY defendant's motion for summary judgment.

---

[8] The Court's description of Groups 6 and 8 differs slightly from plaintiff's descriptions. Plaintiff's Group 6 "claims recite the same abstract idea as Group 1 claims, but use generic terms such a 'computer system' and 'processor,'" and "Group 8 claims recite in 'method' form the abstract idea of Groups 6 and 7." Pl.'s Mem. Invalidity at 4. Upon review of the patent language, however, the Court believes its descriptions are more accurate.

[9] Defendant also argues that the validity of the patents has already been determined by the USPTO. Def.'s Mem. Opp'n at 4, 22. But, Federal Circuit "case law consistently provides that a court is never bound by an examiner's finding in an ex parte patent application proceeding." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007).

## STANDARD OF REVIEW

Summary judgment is appropriate when, based on the record, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the burden, and the court will draw "all justifiable inferences" in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But, a party opposing summary judgment "may not rest upon the mere allegations . . . of his pleading"; instead, he "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (quoting Fed. R. Civ. P. 56(e)). A genuine issue exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## ANALYSIS

A patent is presumed valid under 35 U.S.C. § 282, and the party asserting invalidity bears the burden to show by clear and convincing evidence that the patent is invalid. *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010) (citation omitted). A patent may be granted to "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter," 35 U.S.C. § 101, unless the idea to be patented is a law of nature, a physical phenomenon, or an abstract

idea, *Diamond v. Diehr*, 450 U.S. 175, 185 (1981).[10] However, "an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection," *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1321 (Fed. Cir. 2012) (quoting *Diamond*, 450 U.S. at 187), provided, "the prohibition against patenting abstract ideas '[is not] circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity,'" *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010) (quoting *Diehr*, 450 U.S. at 191-92).

"[T]he form of the claims should not trump basic issues of patentability." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) (citations omitted). Therefore, a court should "look not just to the type of claim but also to the underlying invention," and may find that "a machine, system, medium, or the like may in some cases be equivalent to an abstract mental process for purposes of patent ineligibility." *Id.* at 1276-77 (citation and internal quotation marks omitted). To

---

[10] The Federal Circuit has "not presume[d] to define 'abstract' beyond the recognition that this disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010). Further, "[u]nless the single most reasonable understanding is that a claim is directed to nothing more than a fundamental truth or disembodied concept, with no limitations in the claim attaching that idea to a specific application, it is inappropriate to hold that the claim is directed to a patent ineligible 'abstract idea' under 35 U.S.C. § 101." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 685 F.3d 1341, 1352 (Fed. Cir. 2012).

determine the patent-eligibility of a process,[11] a court may use the "machine-or-transformation" test (the "MOT test") as "an investigative tool" for analyzing claims under § 101. *Bilski*, 130 S. Ct. at 3227, 3231. Under the MOT test, a process is patent-eligible if it either (1) "is tied to a particular machine or apparatus, or (2) [] transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (citations omitted), *aff'd sub nom. Bilski v. Kappos*, 130 S. Ct. 3218. But, for "an otherwise unpatentable process" to be made patent-eligible by use of "a machine, the use of the machine 'must impose meaningful limits on the claim's scope.'" *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) (quoting *In re Bilski*, 545 F.3d at 961). "[T]he machine must play a significant part in permitting the claimed method to be performed," *id.* (quoting *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010)) (internal quotation marks omitted), and must be more than "incidental use . . . to perform [a] mental process," *id.*, because "the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers," *Fort Props.*, 671 F.3d at 1323 (quoting *CyberSource Corp.*, 654 F.3d at 1375).

---

[11] "The term 'process' means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b).

### I. *Group 1 Claims*

Group 1 Claims describe computer systems "that allow for the electronic sale of a component of a fixed-income asset."[12] Def.'s Mem. Validity at 3. Claim 104 of the '202 patent is representative:

> A computer system to make financial analysis output having a system-determined purchase price for at least one component from property in consummating a sale, the system comprising:
>
> > an input device converting input data, representing at least one component from property, wherein the property is a fixed-income asset, into input digital electrical signals representing the input data;
> >
> > a digital electrical computer system controlled by a processor electrically connected to receive said input digital electrical signals and electrically connected to an output means, the processor controlled to manipulate electrical signals to compute a system-determined purchase price for at least one component from property in consummating a sale and corresponding purchase of the component, and to generate financial analysis output at said output means.

U.S. Patent No. 7,908,202 col.61 ll.8-24, Ex. B to Pl.'s Mem. Invalidity at 55.

Claim 104 is nearly identical to the independent method claim previously found

---

[12] As categorized by plaintiff, Group 1 Claims include the following claims from the '202 patent: 57, 58, 76, 104, 106, and 139. Pl.'s Mem. Invalidity at 9. Claim 76 is slightly different from the other Group 1 Claims in that it is directed toward "[a] machine . . . including a computer system." U.S. Patent No. 7,908,202 col.59 ll.1-2, Ex. B to Pl.'s Mem. Invalidity at 54.

invalid by this Court in *Graff/Ross I*.[13] *See* Mem. Op., *Graff/Ross I*, No. 07-cv-796. The equivalence of these claims is readily apparent and the only real difference between the claims is the form in which they were drafted. For example, Claim 104 describes "[a] computer system to make financial analysis output," whereas Claim 101 of the '347 patent describes "[a] method for making financial analysis output." The computer system is comprised of "an input device converting input data, representing at least one component from property, . . . a digital electrical computer system controlled by a processor . . . , the processor controlled to manipulate electrical signals to compute a system-determined purchase price . . . and to generate financial analysis output." U.S. Patent No. 7,908,202 col.61 ll.8-24, Ex. B to Pl.'s Mem. Invalidity at 55. Similarly, the steps of the *Graff/Ross I* method claim include "converting input data, representing at least one component from property, . . . providing a digital electrical computer system

---

[13] Claim 101 of the '347 patent disputed in *Graff/Ross I* provided:
A method for making a financial analysis output having a system-determined purchase price for at least one component from property in consummating a sale, the financial analysis output being made by steps including:
   converting input data, representing at least one component from property, wherein the property is a fixed income asset, into input digital electrical signals representing the input data;
   providing a digital electrical computer system controlled by a processor electronically connected to receive said input digital electrical signals and electronically connected to an output means;
   controlling a digital electrical computer processor to manipulate electrical signals to compute a system-determined purchase price for at least one component from property in consummating a sale and corresponding purchase of the component; and
   generating the financial analysis output at said output means.
Mem. Op. at 3, *Graff/Ross I*, No. 07-cv-796.

controlled by a processor . . . ; controlling a digital electrical computer processor to manipulate electrical signals to compute a system-determined purchase price . . . and generating the financial analysis output." Mem. Op. at 3, *Graff/Ross I*, No. 07-cv-796. This Court will not fall victim to "the draftsman's art," *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012), and "exalt form over substance," particularly here, where "the claim is really to the method or series of functions itself," *CyberSource Corp.*, 654 F.3d at 1374 (citation omitted). Therefore, for purposes of patent-eligibility, these claims are equivalent. *See Bancorp Servs.*, 687 F.3d at 1277.

The method underlying the Group 1 computer systems is clearly the same as the method described by the *Graff/Ross I* independent method claim—i.e., computing a price for the electronic sale of a component of a fixed-income asset and generating financial analysis output. Thus, having already determined that the *Graff/Ross I* independent method claim was a patent-ineligible abstract idea, Mem. Op. at 11-13, *Graff/Ross I*, No. 07-cv-796, I easily conclude that the Group 1 Claims are also patent-ineligible.

Like the claim to "computer readable medium" in *CyberSource Corp.*, and contrary to defendant's assertions, the Group 1 Claims recite abstract ideas that fail to meet the MOT test. Emphasizing the applicability of the Federal Circuit's decision in *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994), Graff/Ross argues that its computer system claims are special purpose machines, and as such, cannot "f[all] within the 'abstract idea' exception to patent eligibility." Def.'s Mem. Opp'n at 14-16 (citations omitted). However, the Federal Circuit has also noted that, "[a]t its most basic, . . . a computer is an automatic electronic device for performing mathematical or logical operations," and

11

"prior to the information age, a computer was not a machine at all; rather, it was a job title: a person employed to make calculations." *Bancorp Servs.*, 687 F.3d at 1277-78 (citations and internal quotation marks omitted). Therefore, "the use of a computer in an otherwise patent-ineligible process for no more than its most basic function . . . fails to circumvent the prohibition against patenting abstract ideas and mental processes." *Id.* at 1278. Here, by looking to the substance of the claims, I find that the computer components are "function[ing] solely as an obvious mechanism for permitting a solution to be achieved more quickly,"[14] *SiRF Tech., Inc.*, 601 F.3d at 1333, and "[s]imply adding a 'computer aided' limitation"—even multiple computer component limitations—"to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible," *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012). Much like Claim 101 to the '347 patent in *Graff/Ross I*, the Group 1 Claims are directed to patent-ineligible subject matter.

## II. Group 2 Claims

Group 2 Claims are dependent on Group 1 Claims, but limit the claim to particular fields of use, such as corporate debt.[15] *See, e.g.*, U.S. Patent No. 7,908,202 col.61 ll.25-

---

[14] The patent description specifically states that, as a matter of efficiency, "it would be best to use automated means to do computing and data processing," U.S. Patent No. 7,908,202 col.8 ll.46-50, Ex. B to Pl.'s Mem. Invalidity at 28, not that the computer components are integral to the performance of the process, *see CyberSource Corp.*, 654 F.3d at 1375. In fact, the patent lists the specific equations that will be used to compute the financial output sought, equations that one could complete mentally or by hand. *See, e.g.*, U.S. Patent No. 7,908,202 col.19 ll.9-30, Ex. B to Pl.'s Mem. Invalidity at 34.

[15] As categorized by plaintiff, Group 2 Claims include the following claims from the '202 patent: 59-63, 77-97, 105, 107-117, 129, 140-160, 163, 191-199. Pl.'s Mem. Invalidity at 9.

28, Ex. B to Pl.'s Mem. Invalidity at 55 (Claim 105: "The system of claim 104, wherein the digital electrical computer processor manipulates the electrical signals to generate the system-determined purchase price for corporate debt as the fixed income asset."). Having determined that the Group 1 Claims' machine limitations fail to "impose meaningful limits on the claim[s'] scope,'" *CyberSource Corp.*, 654 F.3d at 1375 (citation omitted), "the question under § 101 reduces to an analysis of what additional features remain in the claims," *Bancorp Servs.*, 687 F.3d at 1279 (citation omitted). As established by the Supreme Court in *Parker v. Flook*, 437 U.S. 584, 589-90 (1978), and reiterated by that Court in *Bilski*, "limiting an abstract idea to one field . . . d[oes] not make the concept patentable." *Bancorp Servs.*, 687 F.3d at 1275-76, 1280 (quoting *Bilski*, 130 S. Ct. at 3231). Thus, the Group 2 Claims are not patent-eligible, because their various field of use limitations—i.e., corporate debt security (Claim 61); tax-exempt security (Claim 63); yield/discount rate (Claim 109)—fail to provide meaningful limits. *See id.* at 1280 (claim limited to use in life insurance market was unpatentable).

### III. Group 3 Claims

Group 3 Claims, including both independent and dependent claims, are similar to the claims in Groups 1 and 2, but describe the method of the process.[16] Claim 98 is a

---

[16] As categorized by plaintiff, Group 3 Claims include the following claims from the '202 patent: 98-103, 118-127, 131-138, 164-190. Pl.'s Mem. Invalidity at 9. Claims 98 and 164 are the independent claims. Def.'s Mem. Opp'n at 8-9.

representative independent claim:

> A method of using a machine to make financial analysis output, the machine including a computer system comprising a processor and an output device, the method comprising:
>
> > receiving input signals representing input data at a processor, the input data representing a first component of property and a second component of property, wherein at least some of the input data is received from another computer system, wherein the property is a fixed-income asset;
> >
> > program-controlling the processor to manipulate the input signals to compute a one valuation for the first component and an other valuation for the second component in consummating a one sale and corresponding one purchase of the first component to a one buyer at a one price corresponding to the one valuation and in consummating an other sale and corresponding other purchase of the second component to an other buyer at an other price corresponding to the other valuation, and;
> >
> > producing financial analysis output including one of the one valuation and the one price and one of the other valuation and the other price at an output device.

U.S. Patent No. 7,908,202 col.60 ll.30-59, Ex. B to Pl.'s Mem. Invalidity at 54. Claim 99 is a representative dependent claim:

> The method of claim 98, wherein the program-controlling includes program-controlling the processor to compute the one valuation for the first component including at least one security for corporate debt.

*Id.* col.60 ll.51-54, Ex. B to Pl.'s Mem. Invalidity at 54.

Much like the Group 1 Claims, these method claims cite to computer components for "implementation of a purely mental process that could otherwise be performed without the use of a computer," *CyberSource Corp.*, 654 F.3d at 1375, and the dependent claims' field of use limitations do not provide sufficient additional limitations, *Bancorp Servs.*, 687 F.3d at 1275-76, 1280. Once the "insignificant postsolution activity" is

removed, the Group 3 Claims are quite similar to the claims in *Bilski*, where petitioners' sought to patent a well-known business method. 130 S. Ct. at 3229-30. Like the court in *Bilski*, I find that the Group 3 Claims, too, are invalid.

## IV. Groups 4 Claims

The two Group 4 Claims are independent Claims 3 and 64 of the '202 patent.

Claim 3 provides:

> A multiple computer system to make financial analysis outputs, the multiple computer system including:
>
> > a first computer system controlled to generate a first valuation of a component of property, wherein the property is at least one fixed-income asset, as part of a first financial analysis output; and
> >
> > a second computer system including a processor programmed to receive at least some of the first financial analysis output including the first valuation as input, programmed to generate using at least some of said input a second valuation of the component reflecting computation of a yield/discount rate for the property, and controlled to produce a second financial analysis output in consummating a sale and corresponding purchase of the component at a price corresponding to the second valuation, wherein the second financial analysis output includes the price.

U.S. Patent No. 7,908,202 col.55 ll.7-23, Ex. B to Pl.'s Mem. Invalidity at 52. Claim 64 provides:

> An apparatus to make financial analysis outputs, the apparatus including:
>
> > a first computer system including a processor programmed to receive input signals representing a fixed-income asset and controlled to manipulate the input signals to generate a valuation of a component of the fixed-income asset as part of a first financial analysis output; and
> >
> > a second computer system including a processor programmed to receive at least some of the first financial analysis output including the valuation as input and controlled to generate, using at least some of the input, a second financial analysis output including a

> system-determined purchase price for the component in consummating a sale and corresponding purchase of the component.

*Id.* col.58 ll.1-16, Ex. B to Pl.'s Mem. Invalidity at 53.

Again, these claims are simply applying multiple computer limitations to the same abstract idea of computing a price for the sale of a fixed-income asset and generating a financial analysis output, and the "yield/discount rate" field of use limitation in Claim 3 does little to provide additional meaningful limitations. I see no transformation of these computer components into "a different state or thing" or innovation that adds something "specific to the [abstract idea] other than what is well-understood, routine, conventional activity, previously engaged in by those in the field." *Prometheus*, 132 S. Ct. at 1299, 1302. Claims 3 and 64 of the '202 patent are directed toward ineligible subject matter.

## V.   *Group 5 Claims*

Group 5 consists of claims similar to Group 4 Claims, but limited to particular fields of use.[17] All but two of the Group 5 Claims are dependent claims. However, the two independent claims, Claims 1 and 9 of the '202 patent, merely incorporate additional field of use limitations to the Group 4 Claims. For example, Claim 1 is essentially identical to Claim 3, except that Claim 1 specifies that the fixed-income asset is tax-exempt. U.S. Patent No. 7,908,202 col.54 ll.54-col.55 ll.4, Ex. B to Pl.'s Mem. Invalidity at 51-52. Thus, for the same reasons the Group 2 and Group 4 Claims are invalid, so too are the Group 5 Claims.

---

[17] As categorized by plaintiff, Group 3 Claims include the following claims from the '202 patent: 1-2, 4-56, 65-75, 128, 130, 161-162. Pl.'s Mem. Invalidity at 9. Claims 1 and 9 are the independent claims. *Id.* at 8.

## VI. Group 6 Claims

The one claim in Group 6 is independent Claim 1 of the '053 patent:

> A method of using an apparatus in producing financial analysis output in selling fixed income instruments to multiple buyers, the method including:
>
> > receiving at a first processor of a first computer system, from a second processor of a second computer system, data associated with a price a first buyer is willing to pay for a first at least one fixed income instrument, the first computer system being a seller computer system, the first buyer being one of the multiple buyers, each respective one of said at least one fixed income instrument being a respective one of the fixed income instruments;
> >
> > program-controlling the first processor in automatically computing a first yield/discount rate at least in part from at least some of said data associated with the price the first buyer is willing to pay for the first at least one fixed income instrument, the first yield/discount rate being associated with said first at least one fixed income instrument; and
> >
> > outputting financial analysis output comprised of the first yield/discount rate to one of the second computer system and a third computer system of another one of the multiple buyers.

U.S. Patent No. 7,685,053 col.56 ll.1-26, Ex. A to Pl.'s Mem. Invalidity at 52.

Defendant emphasizes that the method recites neither "a mathematical formula" nor a "fundamental economic practice," and stresses the method's use of computer components. Def.'s Mem. Opp'n at 20-21. But a review of the substance of the claim demonstrates that, at its core, the claim is directed toward computer components that are used simply to facilitate the computation of various equations.[18] As this Court previously stated, the use of the machine must be more than "incidental use . . . to perform [a]

---

[18] The '053 patent application contains the same statement as the '202 patent, that, as a matter of efficiency, "it would be best to use automated means to do computing and data processing," U.S. Patent No. 7,685,053 col.8 ll.54-61, Ex. A to Pl.'s Mem. Invalidity at 28, and then recites some of the various equations used to compute the output. *See, e.g., id.* col.19 ll.27-48, Ex. A to Pl.'s Mem. Invalidity at 34.

17

mental process." *CyberSource Corp.*, 654 F.3d at 1375. The Group 6 Claim is directed toward patent-ineligible subject matter.

## VII. Group 7 Claims

The Group 7 Claims are dependent on the Group 6 Claim and recite additional limitations to a particular technological environment or field of use.[19] Because the Group 6 Claim is invalid, and for the same reasons that the Group 2 Claims are invalid, so too are the Group 7 Claims.

## VIII. Group 8 Claims

Group 8 Claims include three independent claims, and claims dependent on them, that describe the apparatus used to implement Groups 6 and 7 Claims.[20] Claim 51 is representative of the independent claims:

> An apparatus to produce financial analysis output in a system to sell fixed income instruments to multiple buyers, the apparatus adapted to carry out the operations of:
>
> > receiving at a first processor of a first computer system, from a second processor of a second computer system, data associated with a price a first buyer is willing to pay for a first at least one fixed income instrument, the first computer system being a seller computer system, the first buyer being one of the multiple buyers; and
> >
> > program-controlling the first processor in automatically computing a first yield/discount rate at least in part from at least some of said data associated with the price the first buyer is willing to pay for the first at least one fixed income instrument, the first yield/discount rate

---

[19] As categorized by plaintiff, Group 7 Claims include the following claims from the '053 patent: 2-50, 372-415. Pl.'s Mem. Invalidity at 9.

[20] As categorized by plaintiff, Group 8 Claims include the following claims from the '053 patent: 51-320, 322, 324-371. Pl.'s Mem. Invalidity at 9. Claims 51-53 are the independent claims. *Id.* at 8.

>being associated with said first at least one fixed income instrument; and
>
>outputting financial analysis output comprised of the first yield/discount rate to one of the second computer system and a third computer system of another one of the multiple buyers.

U.S. Patent No. 7,685,053 col.64 ll.45-64, Ex. A to Pl.'s Mem. Invalidity at 56. Claim 54 is representative of the dependent claims:

>The apparatus of claim 51, wherein the data includes the price the first buyer is willing to pay for the first at least one fixed income instrument.

*Id.* col.65 ll.49-51, Ex. A to Pl.'s Mem. Invalidity at 57.

Although different in form, the Group 6 and Group 8 Claims are similarly directed to an abstract mental process, which defendant attempts to limit through recitation of computer components and field of use restrictions. For the same reasons I found the claims in Groups 2, 6, and 7 invalid, so too, do I find these claims patent-ineligible.

## IX. *Group 9 Claims*

Finally, Group 9 includes two dependent claims, Claims 321 and 323 of the '053 patent. Pl.'s Mem. Invalidity at 9. Claim 321 is dependent on Claim 59, a Group 8 Claim, and specifies that the output means is a monitor. U.S. Patent No. 7,685,053 col.98 ll.41-43, Ex. A to Pl.'s Mem. Invalidity at 73. Claim 323 is dependent on Claim 321, and further limits the apparatus to the field of corporate debt securities. *Id.* col.98 ll.46-48, Ex. A to Pl.'s Mem. Invalidity at 73. The Court has already stated, *ad nauseum*, that merely providing a particular technological environment or field of use limitation to an otherwise patent-ineligible subject matter, does not render the claim patentable. Therefore, I conclude that the Group 9 Claims are also invalid.

## CONCLUSION

For all of the foregoing reasons, I find that the defendant's Patent Nos. 7,685,053 and 7,908,202 constitute patent-ineligible subject matter under 35 U.S.C. § 101, and are therefore invalid. Accordingly, the Court GRANTS Freddie Mac's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 [Dkt. #33] and DENIES Graff/Ross's Motion for Partial Summary Judgment as to Patent Validity [Dkt. #24]. The Court further DISMISSES these actions in their entirety. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge